IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

MICHAEL LANGENHORST, *et al.*,

        Plaintiffs,

v.                                                  Case No. 1:20-CV-01701-WCG

LAURE PECORE, in her official capacity as
Clerk of Menominee County, *et al.*,

        Defendants.

**[PROPOSED] INTERVENOR-DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO INTERVENE**

# I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 24, Proposed Intervenor-Defendant Democratic Party of Wisconsin ("DPW") moves to intervene as a defendant in this lawsuit. Through this action, Plaintiffs—who do not even live in the counties about which they complain—seek to disrupt the lawful certification of ballots in three of Wisconsin's 72 counties based on nothing more than rank speculation and unsupported suspicion. Two of those counties are Wisconsin's most populous, Milwaukee and Dane, and lie outside the Green Bay Division of the Eastern District of Wisconsin (indeed, Dane County is in a different District). The third county named in the Complaint, and the only one with a nexus to the Green Bay Division, is Menominee County, which is essentially coterminous with the Menominee Indian Reservation and is the least populous county in the State.

The relief Plaintiffs seek, wholesale disenfranchisement of more than 792,000 Wisconsinites—or nearly *one in four* of all Wisconsinites who voted in this year's general election—threatens DPW's distinct and protectable legal interests. DPW represents a diverse group of Democrats, including elected officials, candidates for elected office, state committee members, advisory caucuses, affiliate groups, grassroots activists, and voters. Plaintiffs' requested relief threatens to deprive DPW's individual members of their federally protected right to have their votes counted, undermine the electoral prospects of its candidates, and divert its limited organizational resources. DPW's immediate intervention to protect those interests is therefore warranted.

In accordance with Federal Rule of Civil Procedure 24(c), a proposed answer is attached as Exhibit 1.

## II. BACKGROUND

On November 3, 2020, Wisconsin voters cast ballots in one of the most scrutinized elections in recent history—an election that led to record turnout in the midst of the ongoing pandemic. Despite unprecedented levels of observation and supervision, tall tales of phantom fraud have spread widely in the week since election day, including in Wisconsin. The Wisconsin Elections Commission has thoroughly debunked these various rumors, including several that can now be found among the allegations in Plaintiffs' complaint. *See, e.g.*, "Correcting Misinformation about Wisconsin's Election," Wisconsin Elections Commission (Nov. 10, 2020), https://elections.wi.gov/index.php/node/7241; "Important Things Voters Should Know After the Election," Wisconsin Elections Commission (Nov. 5, 2020), https://elections.wi.gov/node/7235.

Joining the ranks of those who rely on conspiracy theories as a basis for requesting that courts disenfranchise hundreds of thousands of voters in counties that President-Elect Biden won, Plaintiffs—whose counsel have recently filed largely identical actions in other states—allege here that "certifying Presidential Electors without excluding certain counties would violate voters' fundamental right to vote by vote-dilution disenfranchisement" because "sufficient illegal ballots were included in the results to change or place in doubt the November 3 presidential-election results." (Compl. ¶¶ 4-9). Plaintiffs claim that the only remedy for these phantom "illegal ballots" is to enjoin the certification of any result in a single race on the ballot—the presidential race—in just three counties, all of which President-Elect Biden won. Not coincidentally, excluding these three counties from the certification would change the outcome of the presidential race in Wisconsin, subverting the plainly expressed will of Wisconsin voters. It also would result in egregious violations of the constitutional rights of DPW's voters and candidates and those of DPW itself.

### III. ARGUMENT

**A. DPW is entitled to intervene as of right.**

DPW qualifies for intervention as of right. Intervention as of right must be granted when (1) the motion to intervene is timely; (2) the proposed intervenors possess an interest in the subject matter of the action; (3) denial of the motion to intervene would affect or impair the proposed intervenors' ability to protect their interests; and (4) the proposed intervenor's interests are not adequately represented by the existing parties to the lawsuit. Fed. R. Civ. P. 24(a)(2); *Driftless Area Land Conservancy v. Huebsch*, 969 F.3d 742, 746 (7th Cir. 2020). The DPW easily satisfies each of these factors.

**1. The motion to intervene is timely.**

First, the motion to intervene is timely. The DPW has sought intervention at the earliest possible stage of this action—the day after Plaintiffs filed their complaint on November 12. The DPW's intervention will neither delay the resolution of this matter nor prejudice any party. There are no motions pending in the case and thus no plausible claim that intervention would cause any prejudicial delay. Under these circumstances, the motion is timely. *See, e.g.*, *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 534 (7th Cir. 1987) (identifying "the length of time the intervenor knew or should have known of her or his interest in the case" as one factor to consider whether motion to intervene was timely).

**2. The DPW has a significant protectible interest in the outcome of the litigation.**

Second, the DPW has significant and cognizable interests in intervening in this case to ensure that Wisconsin voters, including its members, constituents, and those who support its candidates, have their ballots counted. Proposed intervenors are entitled to intervene if they have "direct, significant, and legally protectable" interests in the litigation. *Solid Waste Agency of N.*

*Cook Cnty. v. United States Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996). Here, the DPW, its candidates, and its members have a powerful interest in having ballots counted according to the procedures provided for under Wisconsin law and having election results certified to include all valid ballots.

Plaintiffs have asked this Court to discard hundreds of thousands of ballots cast in three Wisconsin counties, Compl. ¶¶ 61–64, which would severely harm the many DPW members who would be disenfranchised and the candidates whom the DPW supports. It is indisputable that the DPW has a cognizable interest in protecting the voting rights of its members and also the rights of the candidates it supports to have lawful votes cast in their favor included in the final certification of election results. *See Reynolds v. Sims*, 377 U.S. 533, 555 n.29 (1964) ("There is more to the right to vote than the right to mark a piece of paper and drop it in a box or the right to pull a lever in a voting booth. The right to vote includes the right to have the ballot counted."); *cf. Tex. Democratic Party v. Benkiser*, 459 F.3d 582, 586 (5th Cir. 2006) (holding that Texas Democratic Party had direct standing based on "harm to its election prospects").

In related circumstances, courts have held that where proposed relief carried with it the prospect of disenfranchising the Democratic Party's members, the Democratic Party had a legally cognizable interest at stake. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 n.7 (2008) (agreeing with the unanimous view of the Seventh Circuit that the Indiana Democratic Party had standing to challenge voter identification law that risked disenfranchising its members); *cf. NEOCH v. Husted*, 696 F.3d 580 (6th Cir. 2012) (Ohio Democratic Party allowed to intervene in case where challenged practice would lead to disenfranchisement of its voters).

### 3. Denial of the motion to intervene would impair the DPW's ability to protect its interests.

Third, denial of the motion to intervene would interfere with the DPW's ability to protect these interests. Where a proposed intervenor has a protectible interest in the outcome of the litigation, courts have "little difficulty concluding" that their interests will be impaired. *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011). When considering this factor, courts "look[] to the 'practical consequences' of denying intervention." *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); Advisory Comm. to Fed. R. Civ. P. 24 1966 Amendment ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene. . . ."). Intervention is warranted if the proposed remedy threatens to harm intervenors. *See, e.g.*, *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (granting intervention when proposed intervenors "would be directly rather than remotely harmed by the invalidation" of challenged statute).

The disposition of this matter clearly has the potential to impair the DPW's ability to protect its interests. Plaintiffs seek to invalidate every ballot cast in three Wisconsin counties where Democratic candidates, including President-Elect Biden, prevailed, including Wisconsin's two most populous counties. Just reciting Plaintiffs' outlandish request for relief is enough to demonstrate the threat it poses to the DPW's members, candidates whom the DPW supports, and the DPW as an organization. In circumstances where plaintiffs have sought much less far-reaching relief, courts have routinely allowed political parties to intervene. *E.g. Parnell v. Allegheny Bd. of Elections*, No. 20-cv-01570 (W.D. Pa. Oct. 22, 2020), ECF No. 34 (granting intervention to Democratic Congressional Campaign Committee (DCCC) in lawsuit regarding processing of ballots); *Paher v. Cegavske*, No. 20-cv-00243-MMD-WGC, 2020 WL 2042365, at *4 (D. Nev.

Apr. 28, 2020) (granting DNC intervention in election case brought by conservative interest group); *see Donald J. Trump for President, Inc.*, No. 20-cv-10753 (MAS) (ZNQ), 2020 WL 5229209, at *1 (D. N.J. Sept. 01, 2020) (granting DCCC intervention in lawsuit by Republican candidate and party entities); *Cook Cnty. Republican Party v. Pritzker*, No. 20-cv-4676 (N.D. Ill. Aug. 28, 2020), ECF No. 37 (granting DCCC intervention in lawsuit by Republican party entity); *Issa v. Newsom*, No. 20-cv-01044-MCE-CKD, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020) (granting DCCC and California Democratic Party intervention in lawsuit by Republican congressional candidate); *Donald J. Trump for President v. Bullock*, No. 20-cv-66 (D. Mont. Sept. 08, 2020), ECF No. 35 (granting DCCC, DSCC, and Montana Democratic Party intervention in lawsuit by four Republican party entities); *cf. DCCC v. Ziriax*, No. 20-CV-211-JED-JFJ, 2020 WL 5569576, at *2 (N.D. Okla. Sept. 17, 2020), ECF No. 56 ("DCCC and the Democratic candidates it supports . . . have an interest in ensuring that Democratic voters in Oklahoma have an opportunity to express their will regarding Democratic Party candidates running for elections."). Here, the requested remedy and harm is extreme—Plaintiffs seek relief that would not just burden DPW's voters, but would completely disenfranchise hundreds of thousands of them.

### 4. The DPW's interests are not adequately represented by Defendants.

Fourth, the DPW's interests are not adequately represented by Defendants. The burden to satisfy this factor is "'minimal.'" *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). "'[T]he burden of making [this] showing should be treated as minimal,'" as DPW need only show "that the representation 'may be' inadequate." *Id*.

The existing Defendants do not adequately represent the DPW's interests. The state and county defendants' interests in this litigation are defined by their statutory duties to conduct elections and their responsibility to their constituents as a whole. *See, e.g., Utah Ass'n of Counties*

*v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001) ("[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [political party movant] merely because both entities occupy the same posture in the litigation."); *see also Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996) (government defendants necessarily represent "the public interest" rather than the proposed intervenors' "particular interest[s]" in protecting their resources and the rights of their candidates and voters). The DPW's interest, however, is in ensuring that its members are not disenfranchised, and their votes cast for President-Elect Biden and other Democratic candidates in Wisconsin are counted. Because government entities and political parties have fundamentally different interests and objectives, courts routinely permit political parties to intervene in actions where election officials are named as defendants. *Issa*, 2020 WL 3074351, at *3 ("While Defendants' arguments turn on their inherent authority as state executives and their responsibility to properly administer election laws, the Proposed Intervenors are concerned with ensuring their party members and the voters they represent have the opportunity to vote in the upcoming federal election, advancing their overall electoral prospects, and allocating their limited resources to inform voters about the election procedures."); *see also Donald J. Trump for President, Inc. v. Murphy*, No. 320-CV-10753-MAS-ZNQ, 2020 WL 5229209, at *1 (D.N.J. Sept. 1, 2020); *Donald J. Trump for President, Inc v. Cegavkse*, No. 2:20-CV-1445 JCM (VCF), 2020 WL 5229116, at *1 (D. Nev. Aug. 21, 2020); *Paher*, 2020 WL 2042365, at *2.

**B.     The DPW is also entitled to permissive intervention.**

In addition to easily satisfying the requirements for intervention as of right, the DPW meets the standards for permissive intervention under Rule 24(b). The Court has broad discretion to grant a motion for permissive intervention where: (1) the proposed intervenor's claim or defense and the

main action have a question of law or fact in common, and (2) the intervention will not unduly delay or prejudice the adjudication of the original parties' rights. *See* Fed. R. Civ. P. 24(b)(1)(B) and (b)(3); *Bond v. Ultreras*, 585 F.3d 1061, 1070–71 (7th Cir. 2009); *see also Sokaogon Chippewa Comm. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000) ("Permissive intervention under Rule 24(b) is wholly discretionary."). Even where courts deny intervention of right, they often find that permissive intervention is nonetheless appropriate. *See, e.g., City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 986 (7th Cir. 2011); *see also Solid Waste Agency*, 101 F.3d at 509.

The DPW readily meets the requirements of permissive intervention. First, the DPW will inevitably raise common questions of law and fact, including the threshold issue of Plaintiffs' lack of standing to bring their claims. Second, as described, the motion to intervene is timely, and given the early stage of this litigation, intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. The DPW is prepared to proceed in accordance with the schedule this Court determines, and its intervention will only serve to contribute to the complete development of the factual and legal issues before the Court.

## IV. CONCLUSION

For the reasons stated, DPW is entitled to intervention as of right. In the alternative, it requests that the Court grant it permissive intervention.

Dated: November 13, 2020                    Respectfully submitted,

/s/ *David L. Anstaett*

David L. Anstaett (SBN #1037884)
Charles G. Curtis, Jr. (SBN #1013075)
PERKINS COIE LLP
33 East Main Street, Suite 201
Madison, Wisconsin 53703-3095
Telephone: (608) 663-7460
Facsimile: (608) 663-7499
CCurtis@perkinscoie.com
DAnstaett@perkinscoie.com

Marc E. Elias* (DC #442007)
John M. Devaney* (DC #375465)
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
jdevaney@perkinscoie.com

*Counsel for Proposed Intervenor*

*\*Application for Admission Forthcoming*