IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

MICHAEL LANGENHORST, *et al.*,

    Plaintiffs,

v.                              Case No. 1:20-CV-01701-WCG

LAURE PECORE, *in her official capacity as Clerk of Menominee County, et al.*,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE OF [PROPOSED] INTERVENOR-DEFENDANTS LEAGUE OF WOMEN VOTERS OF WISCONSIN, LOUISE PETERING, AND MELANIE RAMEY**

## DESCRIPTION OF PROPOSED INTERVENOR-DEFENDANTS

The League of Women Voters of Wisconsin ("LWVWI"), Louise Petering, and Melanie Ramey (collectively, "Proposed Intervenor-Defendants") move this Court to grant their intervention as defendants in this action. LWVWI is a nonpartisan, nonprofit, non-stock corporation organized under the laws of the State of Wisconsin with its principal office located at 612 West Main St., Suite 200, in the City of Madison, Dane County, Wisconsin. Declaration of Debra Cronmiller ("Cronmiller Decl.") ¶ 1. LWVWI is part of The League of Women Voters of the United States, which has over 700 state and local Leagues in all 50 states, the District of Columbia, Puerto Rico, the Virgin Islands, and Hong Kong. *Id.* LWVWI works to expand informed, active participation in state and local government, giving a voice to all Wisconsinites.

2

LWVWI has members across the state of Wisconsin, including 636 members in Milwaukee County and 582 members in Dane County. *Id.* ¶ 7.

The LWVWI impacts public policies, promotes citizen education, and makes democracy work by, among other things, removing unnecessary barriers to full participation in the electoral process. *Id.* ¶ 2. Currently LWVWI has 20 local Leagues and approximately 3,000 members, including in Milwaukee and Dane counties, and works with and through these 20 local Leagues. *Id.* Members of the local Leagues are members of LWVWI, as well as the national League of Women Voters, and their efforts and work are part of local, state, and national operations and done on behalf of the state and national Leagues. *Id.* ¶ 4. LWVWI offers guidance, resources, materials, trainings, and financing in support of the local Leagues and their activities, which include voter registration drives and campaigns aimed at encouraging registered voters to participate in elections and educating them about properly requesting and returning absentee ballots. *Id.* ¶ 5. LWVWI distributes voter information in the form of thousands of flyers, information cards, guides, and stickers. *Id.*

LWVWI engaged in extensive voter engagement and education activities for the November 3, 2020 general election. *Id.* ¶ 8. LWVWI, along with its Election Protection partners in the Wisconsin Voting Rights Coalition, trained and received reports from 134 nonpartisan election observers at polling places and central count facilities across Wisconsin. *Id.* In total, LWVWI and the coalition partners were able to observe elections in more than 200 municipalities. *Id.*

LWVWI provided early voting and absentee ballot drop box information to more than 148,718 Wisconsin voters in advance of the August and November 2020 elections. *Id.* ¶ 9. It also sent GOTV postcards to more than 180,000 young and infrequent voters. *Id.* Additionally, LWVWI devoted time and resources to ensuring VOTE411.org became fully accessible in

3

Spanish; launched its first large-scale GOTV paid advertising campaign; received more than 1,200 responses to its voter experience surveys; provided unbiased candidate information on approximately 1,000 races and referenda on VOTE411.org; produced a voting guide that was used by over 350 percent more voters than in 2016; and engaged with and educated nearly 400,000 voters who contacted LWVWI with messages about voter registration, absentee and early voting, and with local referenda information through its text-banking program. *Id.* ¶ 10.

LWVWI devotes a substantial part of its year-round work to helping voters register in furtherance of its mission to maximize participation in Wisconsin elections and defend the rights of eligible Wisconsin voters, and the LWVWI and its members who cast ballots will consequently be injured by the discounting of *all* ballots cast in the U.S. presidential race in Milwaukee, Dane, and Menominee counties. *Id.* ¶ 2. Part of LWVWI's core mission is to maximize eligible voter participation through registration and voting, and discounting of all ballots cast would render futile many of its engagement efforts, waste its resources, and directly and severely impede its mission. *Id.*

Louise Petering and Melanie Ramey are registered Wisconsin voters who live in Milwaukee County and Dane County, respectively. Both are members of their local Leagues and LWVWI. They voted by absentee ballot for the November 3, 2020 general election, cast a vote for a presidential candidate, and have an interest in their ballots being counted. *See* Declaration of Louise Petering ¶¶ 1-3; Declaration of Melanie Ramey ¶¶ 1-3.

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure offers two avenues by which non-parties, whether individuals or organizations, may intervene in federal litigation: intervention as of right under Rule 24(a) and permissive intervention under Rule 24(b). For the reasons discussed blow,

Proposed Intervenor-Defendants are entitled to intervention as of right under Rule 24(a). Alternatively, permissive intervention is warranted under Rule 24(b).

## I. Proposed Intervenor-Defendants Are Entitled to Intervene as of Right Under Rule 24(a)(2).

A non-party has the right to intervene in an action when: (1) the application for intervention is timely; (2) the proposed intervenor has an interest relating to the property or transaction which is the subject of the action; (3) the proposed intervenor is so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the existing parties are not adequate representatives of the proposed intervenor's interests. *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 700 (7th Cir. 2003) (citing *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000)); Fed. R. Civ. P. 24(a)(2). Rule 24 "should be liberally construed" in favor of the intervenor. *Clark v. Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953); *S.D. ex rel. Barnett v. U.S. Dept. of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Proposed Intervenor-Defendants satisfy each of these elements.

### A. Proposed Intervenor-Defendants' Motion is Timely.

Proposed Intervenor-Defendants' motion is timely. In deciding whether a motion to intervene is timely, the Seventh Circuit considers four factors: "(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000).

Proposed Intervenor-Defendants' motion easily meets the *Sokaogon* factors. Plaintiffs filed their complaint on November 12, 2020, and only three days have elapsed between its filing and the filing of this motion.

None of the parties will be prejudiced if this Court grants intervention. Because Proposed Intervenor-Defendants moved for intervention at this early juncture—shortly after the filing of the complaint—intervention will not impede, complicate, or delay the resolution of this case. This Court set a status conference for 10:30 a.m. on Monday, November 16, which Proposed Intervenor-Defendants' counsel is prepared to attend and participate in. Proposed Intervenor-Defendants are also prepared to adhere to whatever briefing schedule emerges as a result of the status conference.

On the other hand, denial of this motion to intervene will severely prejudice Proposed Intervenor-Defendants. Any relief awarded to Plaintiffs will disenfranchise Proposed Intervenor-Defendants Petering and Ramey and LWVWI's members in Milwaukee and Dane counties, as well as voters who support LWVWI's mission and policy positions and those whom it engaged through voter registration drives and outreach campaigns. To this end, LWVWI has expended substantial resources to ensure that these voters could cast ballots that would count in the November 3, 2020 general election and would suffer extreme prejudice if they cannot defend and protect those voters' right to vote in the present action. *See* Cronmiller Decl. ¶ 2. Finally, there are no "unusual circumstances" in this case weighing against intervention. Proposed Intervenor-Defendants' motion is therefore timely.

### B. Proposed Intervenor-Defendants Have a Substantial Legal Interest in the Case.

"[A] prospective intervenor's interest must be direct, significant, and legally protectable." *Lopez-Aguilar v. Marion Cty. Sheriff's Dep't*, 924 F.3d 375, 391 (7th Cir. 2019) (quoting *Solid Waste Agency of N. Cook Cty. v. United States Army Corps of Eng'rs*, 101 F.3d 503, 506 (7th Cir. 1996)). While "more than the minimum Article III interest is required," the Seventh Circuit "[has] interpreted statements of the Supreme Court as encouraging liberality in the definition of an

6

interest." *Id.* at 392 (quoting *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 571 (7th Cir. 2009) and *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)).

Plaintiffs seek to invalidate nearly 800,000 ballots across three counties, including the ballots of Proposed Intervenor-Defendants Petering and Ramey and LWVWI's members who reside and vote in Milwaukee and Dane Counties. Proposed Intervenor-Defendants seek to defend their interest in their fundamental right to vote, which includes the counting of those ballots. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1061 (7th Cir. 2020) ("It is undeniable that the right to vote is a fundamental right guaranteed by the Constitution. The right to vote is not just the right to put a ballot in a box but also the right to have one's vote counted."); *United States v. Classic*, 313 U.S. 299, 315 (1941) ("Obviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted."); *see also Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (noting the right to vote "is regarded as a fundamental political right, because preservative of all rights"); *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("It is beyond cavil that voting is of the most fundamental significance under our constitutional structure.") (internal citation and quotations omitted); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live."). As a membership organization, LWVWI has a strong interest in protecting its members' votes. Cronmiller Decl. ¶ 6. Proposed Intervenor-Defendants Petering and Ramey also have strong interests in protecting their own right to vote. In so doing, LWVWI also seeks to protect its mission to promote civic engagement and maximum turnout among registered Wisconsin voters, to which it regularly dedicates the majority of its resources each year, a substantial portion of which relates to its activities in Milwaukee and Dane Counties. *Id.* ¶ 2.

Furthermore, LWVWI's voter engagement and education efforts, as well as its voter advocacy efforts, would be frustrated if lawfully-cast ballots were rejected, because some voters would then believe that voting is pointless and that their ballots are disposable. This would make it more difficult and expensive for LWVWI to continue its engagement and outreach efforts in years to come, and the organization would be forced to divert resources from other priorities to restore its members' and other voters' confidence in the electoral process. This threat gives LWVWI a significantly protectable interest in this litigation. *See, e.g., Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission.").

### C. Proposed Intervenor-Defendants' Ability to Protect Their Interests Will Be Impaired Absent Intervention.

Proposed Intervenor-Defendants are also "so situated that disposing of th[is] action may as a practical matter impair or impede th[eir] ability to protect [their] interest" in protecting their voting rights and preventing further constitutional injury. Fed. R. Civ. P. 24(a)(2). Courts have found this prong of the test satisfied even where prospective intervenors show only that their interests "*may*, as a practical matter," be impaired. *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (emphasis added). Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345; *see also Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1122 (3d Cir. 1992).

In this suit, Plaintiffs ask this Court to invalidate *all* presidential election results from Menominee, Dane, and Milwaukee Counties, which would invalidate the votes of voters in those counties who cast their ballots, without prior warning to them that their votes may be invalidated and without procedural due process. First Amended Compl. ¶¶ 62-64; *cf. Morrell v. Mock,* 270

8

F.3d 1090, 1095 (7th Cir. 2001) ("To meet the requirements of due process, the state must afford notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))); *Gilbert v. Homar,* 520 U.S. 924, 930 (1997) (holding that post-deprivation proceedings are inadequate except in situations "where a State must act quickly, or where it would be impractical to provide predeprivation process . . ."). If Plaintiffs are successful, the presidential election votes cast by Proposed Intervenor-Defendants Petering and Ramey, LWVWI's members, and other voters in these counties will be invalidated, thus denying these voters the right to vote in violation of the First Amendment and Fourteenth Amendment and frustrating LWVWI's organizational goals. Further, such an unthinkable outcome would cause LWVWI to have wasted substantial resources assisting and engaging voters in Milwaukee and Dane counties. Because the deadline for casting a vote has already passed, Proposed Intervenor-Defendants have no alternative to intervening in this lawsuit to protect these interests. Denying intervention would thus impair Proposed Intervenor-Defendants Petering and Ramey in defending their lawfully-cast votes and impair LWVWI from defending its interests and those of its members against Plaintiffs' unprecedented and extreme arguments and from ensuring that these votes are included in the final, certified results of the county and state canvasses.

**D. Defendant Will Not Adequately Represent Proposed Intervenor-Defendants' Interests.**

The final requirement for intervention as of right is that the applicant's interest must not be adequately represented by existing parties. Fed. R. Civ. P. 24(a)(2). "A party seeking intervention as of right must only make a showing that the representation 'may be' inadequate and 'the burden of making that showing should be treated as minimal.'" *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007) (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)). Proposed Intervenor-Defendants meet this standard, where they do not share the

same goal as Defendants and Defendants cannot represent LWVWI's organizational interests or the "individual and personal" right to vote of Proposed Intervenor-Defendants Petering and Ramey and other LWVWI members. *Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018) (quoting *Reynolds v. Sims*, 377 U.S. 533 (1964)); *see also Luft v. Evers*, 963 F.3d 665, 669 (7th Cir. 2020) (noting "the right to vote is personal"). Additionally, LWVWI has twice sued the Defendant Commissioners this year—including in an ongoing matter before the U.S. District Court for the Western District of Wisconsin—thus rendering their interests in this matter adverse.

A presumption of adequate representation arises "[w]here a prospective intervenor has the same goal as the party to a suit." *Shea v. Angulo*, 19 F.3d 343, 347 (7th Cir. 1994). "In such circumstances, the proposed intervenor 'must demonstrate, at the very least, that some conflict exists.'" *Id.* (quoting *Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 683 F.2d 201, 204 (7th Cir. 1982)). Here, Defendants and Proposed Intervenor-Defendants' interests are very much in conflict.

*First*, Defendants are necessarily and primarily concerned with defending before this Court their legal interpretations and the actions they took pursuant to their duties to administer the state's election code. *See generally* Wis. Stat. § 5.05(1). Stated differently, their goal is to defend the State of Wisconsin against liability. This interest is distinct from Proposed Intervenor-Defendants Petering and Ramey's individual, constitutional right to vote, LWVWI members' rights to vote and due process, and LWVWI's organizational interests. *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-CV-4095-EFM-DJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (intervenors who had shown their interests in protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g., Meek v. Metro. Dade County*, 985

F.2d 1471, 1478 (11th Cir. 1993) ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors."), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). Indeed, the constitutional amendments that enshrine these rights—the First and Fourteenth Amendments—protect individuals against the state. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019) ("The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors."); *Collins v. City of Harker Heights*, 503 U.S. 115, 126 (1992) ("[T]he Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.'" (quoting *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)) (alterations in original)). Defendants do not share these rights and interests and, therefore, their interests in this litigation are not perfectly aligned with Proposed Intervenor-Defendants' interests. Given the non-alignment, Defendants cannot adequately and zealously represent Proposed Intervenor-Defendants' rights and interests.

**Second**, representation by an existing party is not adequate where the party has or represents "an interest adverse to the proposed intervenor." *Planned Parenthood of Wis. v. Kaul*, 942 F.3d 793, 808 (7th Cir. 2019) (Sykes, J., concurring) (quoting *Martin v. Kalvar Corp.*, 411 F.2d 552 (5th Cir. 1969)); *United States v. Bd. of Sch. Comm'rs of City of Indianapolis*, 466 F.2d 573, 575 (7th Cir. 1972). Here, in this election cycle, Proposed Intervenor-Defendant LWVWI has actively litigated two cases against Defendants Jacobs, Thomsen, Bostelmann, Glancey, Knudson, and Spindell in their official capacities as members of the Wisconsin Election Commission. *See Gear v. Bostelmann*, No. 20-cv-278 (W.D. Wis.); *LWVWI v. Knudson*, No. 19-cv-1029 (W.D.

Wis.). In *LWVWI v. Knudson*, LWVWI alleged that the threatened purge of over 200,000 registered Wisconsin voters from the state's voter rolls without constitutionally adequate notice and an opportunity to confirm or update their registrations would violate these voters' right to due process. In *Gear*, LWVWI challenged the Defendant Commissioners' enforcement of certain state statutes during the COVID-19 pandemic as they unconstitutionally burdened Wisconsin voters who are at increased risk of death or severe illness from COVID-19. Given the ongoing adversity between Defendants and LWVWI in the *Gear* case, Defendants cannot adequately represent LWVWI's asserted interests.

## II. Alternatively, Proposed Intervenor-Defendants Should Be Granted Permissive Intervention.

In the alternative, the Court should grant Proposed Intervenor-Defendants permissive intervention. The Court may permit intervention by a proposed intervenor who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court should permit intervention where it "will [not] unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Proposed Intervenor-Defendants intend to address many common questions of law and fact to defend this action, specifically, by defending against harms to Proposed Intervenor-Defendants Petering and Ramey's constitutional rights, those of LWVWI's members, and LWVWI's organizational interests that would result from granting Plaintiffs' requested relief. The adjudication of these factual and legal questions is also central to the case between the original parties.

Intervention will also not unduly delay or prejudice the original parties' rights. Proposed Intervenor-Defendants moved for intervention quickly, just three days after Plaintiffs filed their complaint. Because this motion comes so early, intervention will not impede, complicate, or delay

12

the resolution of this case. This Court has set a status conference for 10:30 a.m. on Monday, November 16, which Proposed Intervenor-Defendants' counsel is prepared to attend and participate in. Proposed Intervenor-Defendants are also prepared to adhere to whatever briefing schedule emerges as a result of that status conference. Moreover, permitting Proposed Intervenor-Defendants to intervene will support judicial economy by allowing this Court to hear directly from affected voters and a nonpartisan organization dedicated to representing the interests of Wisconsin voters, and to consider the constitutional arguments they intend to raise, thereby obviating the need for any further, future litigation concerning Plaintiffs' quest to invalidate all ballots cast in the general election in Milwaukee, Dane, and Menominee counties. As such, should the Court find that Proposed Intervenor-Defendants are not entitled to intervene as of right, they respectfully request the Court grant them permissive intervention.

## CONCLUSION

For the foregoing reasons, the Court should grant intervention of right or, alternatively, permissive intervention.

DATE: November 15, 2020                    Respectfully submitted,

*/s/ Jon Sherman*

Jon Sherman
D.C. Bar. No. 998271
Michelle Kanter Cohen*
D.C. Bar No. 989164
Cecilia Aguilera*
D.C. Bar No. 1617884
FAIR ELECTIONS CENTER
1825 K St. NW, Ste. 450
Washington, D.C. 20006
jsherman@fairelectionscenter.org
mkantercohen@fairelectionscenter.org
caguilera@fairelectionscenter.org
(202) 331-0114

/s/ Douglas M. Poland

Douglas M. Poland
State Bar No. 1055189
STAFFORD ROSENBAUM LLP
222 West Washington Avenue, Suite 900
P.O. Box 1784
Madison, Wisconsin 53701-1784
dpoland@staffordlaw.com
(608) 256-0226

*Counsel for Proposed Intervenor-Defendants*

*\*Application for Pro Hac Vice Admission Forthcoming*